UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

BRENT T. WEINBERGER,

        Appellant,

        v.

ANCHORBANK, FSB,

        Appellee.

Case No. 10-C-0996

---

**DECISION AND ORDER**

---

In this bankruptcy appeal Debtor Brent T. Weinberger seeks review of a decision of the United States Bankruptcy Court for the Eastern District of Wisconsin, which found $49,559.48 of Weinberger's debt to AnchorBank, FSB ("AnchorBank") nondischargable. AnchorBank held a perfected security interest in the assets of Technology Tool & Die, Inc., including all tools and equipment. AnchorBank commenced this adversary proceeding against Weinberger claiming that he had removed certain machine tooling from the business premises after the business had shut down, thereby depriving AnchorBank of its collateral. Weinberger denied the allegations and a trial was held before The Honorable Margaret Dee McGarity. On this appeal, Weinberger argues that the Bankruptcy Court erred in allowing lay testimony on the valuation of the allegedly converted tooling and erroneously found that Weinberger knowingly converted property of AnchorBank. For the following reasons set forth herein the decision and order of the Bankruptcy Court will be affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

Weinberger was a co-owner of Technology Tool & Die, Inc., a machine shop in Green Bay, Wisconsin, which went out of business on May 21, 2009. AnchorBank had a perfected security interest in the assets of Technology Tool along with a personal guarantee of Weinberger. On June 5, 2009 the Brown County Wisconsin Circuit Court entered an Order directing Technology Tool to turn over possession of all the Technology Tool collateral to AnchorBank. Weinberger voluntarily filed a petition for Chapter 7 bankruptcy on June 25, 2009.

On August 18, 2009 AnchorBank sold the remaining assets of Technology Tool to a new company which was formed by former employees of Technology Tool. One of those employees was Eric VandenBusch. After the sale proceeds were applied to the amount Technology Tool owed AnchorBank, Technology Tool's remaining balance due AnchorBank was $252,350.11. (Bankruptcy Case No. 09-02420, "Bankruptcy Docket" 1, Complaint.)

On October 20, 2009 AnchorBank commenced an adversary action against Weinberger. It claimed that Weinberger improperly removed from the Technology Tool facility machine tooling in which AnchorBank had a perfected security interest. The Bankruptcy Court conducted a trial on August 27, 2010. The Bankruptcy Court determined that approximately $50,000 of Weinberger's debt was non-dischargeable pursuant to 11 U.S.C. § 523 (a)(6). Weinberger filed a notice of appeal on September 30, 2010.

The particular events which occurred between May and August 2009, played a central role in the Bankruptcy Court's trial and decision. The Bankruptcy Court considered the following evidence:

On May 20, 2009, just one day before Technology Tool ceased operations, one of Technology Tool's employees, Eric Vanden Busch, took photos of the equipment and tools in the Technology Tool shop. (Transcript of Bankruptcy Court proceedings, Dkt. 1, Ex. 21, hereinafter "Tr." at 34:22-35:10). These photos provide a snapshot of the equipment and tools that were in the shop prior to Technology Tool's closing. (Tr. 36:22-24). On May 21, 2009, Technology Tool closed its doors and Weinberger directed Vanden Busch to terminate the employees and retrieve their keys. (Tr. 33:7-17). Vanden Busch did so and surrendered all keys, including his own, to Weinberger. (Tr. 33:18:33:24). On May 22, 2009, Weinberger asked Mark Mauel, a former employee of Technology Tool, to return to the shop and assist Weinberger with removal of certain tooling from the machines. (Tr. 83:19-23; 83:17-84:3). Weinberger called Mauel for help because Weinberger did not know how to remove the tooling. (Tr. 143:23-144:5). Mauel helped Weinberger remove the tooling and placed the tooling onto wheeled carts per Weinberger's instruction. (Tr. 84:6-11). Weinberger paid Mauel for the time spent providing this assistance in cash. (Tr. 84:22-23). Another witness, Jeff Karchinski, testified that a few days after Technology Tool closed he witnessed Weinberger outside the facility with a full pick up truck. (Tr. 92:15-93:20). On or about June 3 or 4, 2009, the landlord of Technology Tool's shop changed the locks of the building. (Tr. 118:4-8). On June 6, 2009, Vanden Busch took a second round of photos of the tooling and machinery that remained inside Technology Tool's shop. VandenBusch testified that this second set of photos revealed that numerous items were missing including carbide inserts, drills, tool holders and tooling all of which are necessary to operate the machines in which they were used. (Tr. 38:4-42:14). By comparing his first set of photos to his second set of photos Vanden Busch compiled a list of the missing tooling (hereinafter the "Missing Collateral").

3

Vanden Busch's testimony characterized the Missing Collateral as small and easily movable items: "a lot of little things you just pick up and run with". (Tr. 38:19-39:20; 49:19).

After Technology Tool's demise, Vanden Busch and several other employees banded together to purchase the assets of Technology Tool from AnchorBank in order to start their own business. VandenBusch testified that, upon his purchase of the remaining collateral from AnchorBank, he would have offered $411,000.00 but, due to missing items, he reduced his offer to $350,000.00. (Tr. 46:23). In turn, AnchorBank agreed to reduce the asking price of the remaining collateral to $350,000.00 due to the missing items. (Tr. 18:20-22).

**ANALYSIS**

Federal district courts have jurisdiction to hear appeals of bankruptcy court orders under 28 U.S.C. § 158(a). The reviewing court accepts the bankruptcy court's factual findings unless they are clearly erroneous. Fed. R. Bankr. P. 8013; *In re Excalibur Auto. Corp.*, 859 F.2d 454, 457 n.3 (7th Cir. 1988). The court's evidentiary rulings are reviewed under an abuse of discretion standard. *Von Der Ruhr v. Immtech International, Inc.*, 570 F.3d 858, 862 (7th Cir. 2009). If the bankruptcy court's factual findings are silent or ambiguous as to an outcome-determinative factual question, the district court may not engage in its own fact-finding but, instead, must remand the case to the bankruptcy court for the necessary factual determination. *Wegner v. Grunewaldt*, 821 F.2d 1317, 1320 (8th Cir. 1987). Legal conclusions, as well as mixed questions of law and fact, are reviewed *de novo*. *Mungo v. Taylor*, 355 F.3d 969, 974 (7th Cir. 2004).

Weinberger argues the bankruptcy court erred as a matter of law (1) by not ruling on a motion in limine and allowing Eric VandenBusch to testify; (2) by finding that Weinberger

4

knowingly converted AnchorBank's property; (3) by misidentifying missing items; and (4) by improperly determining the fair market value of the missing items. I take up these four issues in turn.

**A. Motion in Limine**

Per the Bankruptcy Court's scheduling order the parties were to disclose expert witnesses by June 8, 2010. Neither side disclosed expert witnesses.

On July 7, 2010 Weinberger filed a motion in limine with the Bankruptcy Court seeking to prohibit AnchorBank from attempting to offer "hearsay testimony from any named witness concerning the value of any allegedly missing machine tooling" and prohibiting AnchorBank from offering "testimony concerning the fair market value of any allegedly missing tooling." (Bankruptcy Dkt. #19 at 9.) The Bankruptcy Court indicated it would address the motion at trial. Weinberger now contends that the Court failed to properly rule on Weinberger's motion during trial and abused its discretion in allowing Vanden Busch to offer testimony as to the value of the missing collateral.

At trial AnchorBank presented the testimony of Vanden Busch. He testified to the value of the missing tooling. AnchorBank presented no other evidence regarding the value of the missing tooling. Weinberger argues the Bankruptcy Court erred by allowing Vanden Bush to provide his opinion testimony at the trial. Weinberger's position is that Vanden Busch gave an expert opinion and, therefore, should have been listed as an expert. He concludes that the Bankruptcy Court erred by allowing Vanden Bush's testimony over his motion in limine and objection. Weinberger argues alternatively, even if Vanden Busch was merely a lay witness, there was no proper foundation laid for his lay opinion testimony.

5

Federal Rule of Evidence 701 governs the admissibility of lay opinion testimony. Rule 701, entitled "Opinion Testimony by Lay Witnesses" states:

> If the witness is not testifying as an expert, the witnesses' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

(FRE 701.) AnchorBank does not dispute the fact that Vanden Busch gave opinion testimony at trial. The key issues, then, are whether Vanden Busch's testimony was admissible under Rule 701 and whether a proper foundation was laid.

The evidence establishes that VandenBusch had been an employee of Technology Tool for five years. During that time he worked extensively with the machines and tooling in the shop. He had personal knowledge of the age and condition of the tooling and had previously helped Weinberger determine the value of some of the same items at issue when they were originally purchased. Vanden Busch also conducted research before offering to purchase the remaining equipment from AnchorBank after the bank repossessed it from Technology Tool. He performed internet searches on used tooling. He also referred to a manufacturer's book detailing prices of available tools. He then made an offer to AnchorBank based on his assessment of what the remaining tool and machinery were worth as compared to what they would have been worth if items had not been removed.

In overruling Weinberger's objection to Vanden Busch's testimony the Bankruptcy Court explained:

> He has experience in pricing. He's done it in the past. And for that matter, he now owns a company that has a similar – has similar needs for equipment. I think there's enough foundation. You don't allow speculation, or at least don't consider

6

> speculation. And many owners are speculating. So just because it's admissible doesn't mean that you give it any weight. But he has established his sources for what you could consider a lay opinion. But he's described his methodology. That's all the foundation you need. And what other methodology could there be? An appraiser that went in and appraised property that isn't there; that's kind of hard.

(Tr. 72:2-14.)

Weinberger makes a valid point: it would be impermissible hearsay to allow a lay witnesses to testify to the results of his internet searches and his review of pricing guides. But here Vanden Busch provided a lay opinion which was based on many factors, including his substantial personal involvement with the tooling in dispute. It is plain from this record that Vanden Busch's testimony did not merely parrot back what he read on the internet or in a book, but rather added what he read to his existing – and significant – personal knowledge in order to provide his lay opinion. Though Vanden Busch may have consulted inadmissable hearsay material at some point, his lay opinion was based on his personal familiarity with the tooling in dispute, not on inadmissable hearsay. Vanden Busch, as one of the new owners of the tooling at issue, had reason to know the value of the tooling. *See Barry Russell, Bankruptcy Evidence Manual* § 701:2 (2009-10) (courts generally allow owner to give his opinion on value of his property); *See also Asplundh Mfg. Div. v. Benton Harbor Eng'g,* 57 F.3d 1190, 1196-98 (3d Cir.1995) (listing testimony as to the value of one's property as "quintessential Rule 701 opinion testimony"). Admittedly Vanden Busch was not an owner of the tooling at the time it went missing. But he became an owner of related machines and replacement tooling shortly thereafter. His unique background, both as one who worked with the tooling over the course of five years and as the eventual purchaser of the machines that used the tooling, allows him to offer a lay opinion as to the value of the tooling.

7

His testimony is also admissible as evidence of the loss that AnchorBank suffered as a result of the loss of its collateral. Vanden Busch was also the buyer of the collateral, and his testimony that he would have paid $61,000 more if the missing collateral was included provided clear and undisputed evidence of the loss AnchorBank sustained as a result of its removal. Not only did Vanden Bush testify as to the difference in what he was willing to offer to account for the missing collateral, but he also explained how he arrived at the purchase price he ultimately offered. He determined what the replacement cost would be for the missing items. The bankruptcy court then used the $61,000 difference as the starting point for its analysis and reduced it by the value of items that the parties agreed had to be purchased new.

In sum, I conclude that expert testimony was not needed to prove the value of the missing collateral and the bankruptcy court did not abuse its discretion in allowing Vanden Busch testify as to how he determined what it would cost to replace it. *See, e.g., Wisconsin Alumni Research Foundation v. Xenon Pharmaceuticals, Inc.*, 591 F.3d 876, 886 (7th Cir. 2010) ("Here, although the interlocking contracts were obviously technical and complex, the issue of damages was not beyond a lay juror's understanding. The Foundation was entitled to prove the value of the sublicense essentially by a process of elimination-by showing that the other items in the Xenon-Novartis transaction had little or no value. This method of proving damages dispensed with any need for expert testimony regarding the market value of the joint patent application.").

**B. Knowing Conversion of AnchorBank's Property**

Bankruptcy Code § 523(a)(6) exempts from discharge any debt incurred as the result of "willful and malicious injury by the debtor to another entity or to the property of another entity."

At trial AnchorBank argued that Weinberger willfully and maliciously removed tooling from Technology Tool and, therefore, debt equal to the value of the tooling was non-dischargeable. Anchor Bank bore the burden of proving three elements: (1) Weinstein caused an injury; (2) his actions were willful; and (3) his actions were malicious. *Golant v. Care Comm., Inc.,* 216 B.R. 148, 253 (N.D. Ill. 1997). Weinberger now appeals based on his position that AnchorBank presented "no credible evidence that [he] removed any tooling from the premises." (Weinberger Br., Dkt. 3, at 29.)

At trial several witnesses testified regarding the missing tooling. First, Vanden Busch testified that he took photos of various machine parts on May 20, 2009. (Tr. 36:18.) He compiled Trial Exhibit 7, a list of allegedly missing equipment, by comparing his May 20, 2009 photos to another set of photos he took on June 4, 2009. (Tr. 43.) Second, Mark Maul, a former employee of Technology Tool, testified that Weinberger called after the business closed and him and asked him to remove tooling from the machines. (Tr. 85-86.) Maul removed the tooling and set it on a wheeled cart and on tables by the machines. (Tr. 86:4-7.) Weinberger paid Maul in cash for Maul's assistance. Third, Jeff Karchinski, testified. Karchinksi is the owner of Data Tech, a company that sublet space from Technology Tool. He testified that after Technology Tool closed in late May 2009 he saw Weinberger and Weinberger's brother in a pickup truck outside of Technology Tool. He remembered seeing a chair in the truck and that "it was a full truck." (Tr. 95.) A physical inventory of all the machines and tooling was performed after August 18, 2009 when Vanden Busch's newly formed company purchased Technology Tool's remaining equipment from AnchorBank. (Tr. 59.) Vanden Busch testified that the Missing Collateral needed to be replaced in order to run his new business. (Tr. 77.)

9

Weinberger took the stand and testified about his decision to take the tooling out of the machines. He claimed that he paid Maul to remove the tooling because he was concerned that the machines would be repossessed and that the tooling would still be in the machines. (Tr. 137-138.) He indicated that he wanted to separate the tooling from the machines so that the firm that leased the machines to him, upon repossession, would not accidentally take the tooling. The bankruptcy court found that this explanation made no sense, however. Moreover, Weinberger admitted that he took things out of Technology Tool the day Karchinksi saw him with a loaded pick up truck. Although he denied that he took the tooling in question, the bankruptcy court was not required to believe him. (Tr. 129.) Indeed, there was no other reasonable explanation for the disappearance of the tooling other than its conversion by Weinberger.

On this record the Bankruptcy Court's determination will not be reversed. "Because a person will rarely admit to acting in a willful and malicious manner, those requirements must be inferred from the circumstances surrounding the injury." *Kawaauhau v. Geiger (In re Geiger),* 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). That is what the Bankruptcy Court did here. It considered the circumstantial evidence along with the testimony of the witnesses and concluded that Weinberger did in fact willfully and maliciously cause an injury to AnchorBank by removing the tooling. (Tr. 186-190.) The Bankruptcy Court reasonably concluded that Weinberger's explanation was not credible. (Tr. 189:2-9.) Indeed, there was no good reason to remove the tooling from the machines other than to take it. The facts at hand present a compelling circumstantial case that Weinberger willfully and maliciously removed the tooling. The bankruptcy court's finding is not clearly erroneous and therefore must stand.

**C. Identification of the Missing Items**

Weinstein contends AnchorBank failed to identify the allegedly missing items. (Dkt. 3 at 29). Trial Exhibit 7, which was prepared by Vanden Busch, lays out the list of missing tooling. Weinstein takes issue with Trial Exhibit 7 because it fails to account for other possibilities; the mere fact that Vanden Busch's photos did not show an item does not necessarily mean the item is missing. Instead the items could have been "underneath a bench or in a different area of the shop" when Vanden Busch took the photos – as such the items would not be on the photos but they also would not be "missing." Weinstein complains that AnchorBank performed no full physical inventory and presented no inventory or listing of part numbers to show the missing tooling. The first full formal inventory was performed on August 18, 2009 when Action Tool purchased the Remaining Collateral from AnchorBank. But a creditor can hardly be expected to provide precise proof when the very items it needs for such proof are missing. *See Sears, Roebuck and Co. v. Taylor (In re Taylor),* 211 B.R. 1006 (Bankr. M.D.Fla. 1997) ("If a creditor is unable to offer evidence of value because the creditor needs to examine the item to offer such evidence and the defendant's disposition of that item makes the examination impossible, the creditor's lack of precise proof could be excused.").

**D. Fair Market Value of the Missing Items**

Weinstein argues that even if Vanden Busch's testimony and Trial Exhibit 7 were properly admitted the Bankruptcy Court still had no way to determine the fair market value of the allegedly missing items.

## CONCLUSION

For the reasons set forth above, I conclude that the bankruptcy court did not err in allowing Vanden Busch to testify and its findings of fact are not clearly erroneous. To the contrary, they are well supported by the evidence. Accordingly, the decision of the bankruptcy court is affirmed.

**IT IS THEREFORE ORDERED** that the decision of the bankruptcy court in favor of AnchorBank and against Weinstein in the amount of $49,559.48 is **AFFIRMED**.

Dated this ___16th___ day of February, 2011.

        s/ William C. Griesbach
        William C. Griesbach
        United States District Judge